# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **i4i LIMITED PARTNERSHIP and INFRASTRUCTURES FOR INFORMATION INC.,** | § § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION NO. 6:07-CV-113 LED** |
| **v.** | § § | |
| **MICROSOFT CORPORATION,** | § § | |
| **Defendant.** | § | |

**MICROSOFT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OF
NO INDIRECT INFRINGEMENT OF THE PATENT-IN-SUIT
AND ALTERNATIVE MOTION FOR NEW TRIAL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.     APPLICABLE LAW ........................................................................................................ 4

        A.      Standards for Judgment as a Matter of Law Under FED. R. CIV. P. 50(b) ..............4

        B.      Standards for New Trial Under FED. R. CIV. P. 59 ...............................................5

        C.      Standards for Proving Indirect Infringement ........................................................6

                1.      Proof of Contributory Infringement Requires Proof of a Lack of
                        Substantial Noninfringing Uses ................................................................6

                2.      Proof of Contributory Infringement Requires Proof of Knowledge
                        of the Infringement .................................................................................7

                3.      Proof of Inducement Requires Proof of Specific Intent to
                        Encourage Another's Infringement............................................................8

III.    STATEMENT OF ISSUES PRESENTED...................................................................... 10

IV.     ARGUMENT ................................................................................................................... 11

        A.      No Reasonable Juror Could Find that Microsoft Contributed to Direct
                Infringement by Third Parties ...............................................................................11

                1.      The Accused Infringing Acts Require Use of the Custom XML
                        Feature in Word 2003 and Word 2007 in a Specific Manner ...................12

                2.      i4i Has Admitted That the Custom XML Feature in Word 2003
                        and Word 2007 Has Noninfringing Uses.................................................14

                3.      No Reasonable Juror Could Find that Microsoft Had the Requisite
                        Knowledge for Contributory Infringement Pre-Suit.................................18

                4.      No Reasonable Juror Could  Find that Microsoft Sold or Offered
                        for Sale a Material or Apparatus for Use in Performing i4i's
                        Claimed Processes .................................................................................20

        B.      No Reasonable Juror Could Find that Microsoft Had the Requisite
                Knowledge of Potential Infringement Pre-Suit or Has Ever Had "Specific
                Intent" To Induce Direct Infringement by Third Parties .......................................22

        C.      No Reasonable Jury Could Find Direct Infringement by Others Based on
                i4i's Unreliable Survey Evidence .........................................................................23

D.      In the Alternative, a New Trial is Warranted..........................................................25

      1.      Rejection of Either Theory of Indirect Infringement Requires a
New Trial In View of the General Verdict of "Infringement"...................25

      2.      Error in the Instructions to the Jury on Induced Infringement Also
Requires a New Trial ................................................................................26

      3.      Error in the Instructions to the Jury on Contributory Infringement
Also Requires a New Trial.........................................................................28

V.      CONCLUSION:  RELIEF REQUESTED........................................................................ 29

# TABLE OF AUTHORITIES

## Cases

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.*,
   501 F.3d 1307 (Fed. Cir. 2007) ........................................................ 6

*Advanced Display Sys. v. Kent State Univ.*,
   212 F.3d 1272 (Fed. Cir. 2000) ...................................................... 28

*Am. Home Assurance Co. v. United Space Alliance*,
   378 F.3d 482 (5th Cir. 2004) .......................................................... 5

*Aro Mfg. Co. v. Convertible Top Replacement Co.* ("*Aro II*"),
   377 U.S. 476 (1964) .................................................................. 2, 7

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938) ...................................................................... 5

*DSU Medical Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006) (*en banc*) ................................... passim

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
   363 F.3d 1263 (Fed. Cir. 2004) ...................................................... 23

*Eli Lilly & Co. v. Aradigm Corp.*,
   376 F.3d 1352 (Fed. Cir. 2004) ........................................................ 5

*epicRealm Licensing, LLC v. Autoflex Leasing, Inc.*,
   492 F. Supp. 2d 608 (E.D. Tex. 2007) ......................................... 9, 22

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
   365 F.3d 1054 (Fed. Cir. 2004) ........................................................ 6

*Immunocept, LLC v. Fulbright & Jaworski, LLP*,
   504 F.3d 1281 (Fed. Cir. 2007) ........................................................ 5

*Jackson v. Nat'l Action Fin. Svcs.*,
   441 F. Supp. 2d 877 (N.D. Ill. 2006),
   *aff'd*, 505 F.3d 769 (7th Cir. 2007) ............................................... 24

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*,
   545 F.3d 1340 (Fed. Cir. 2008) ............................................... 3, 9, 27

*Laitram Corp. v. Rexnord, Inc.*,
   939 F.2d 1533 (Fed. Cir. 1991) ........................................................ 6

*McNair v. City of Cedar Park*,
   993 F.2d 1217 (5th Cir. 1993) ......................................................... 4

*Microsoft Corp. v. AT&T Corp.*,
   550 U.S. 437 (2007) ................................................................................. 3, 21, 28

*Montgomery Ward & Co. v. Duncan*,
   311 U.S. 243 (1940) ..................................................................................... 5

*Ocean Innovations, Inc. v. Archer*,
   483 F. Supp. 2d 570 (N.D. Ohio 2007) ........................................................ 8

*Old Town Canoe Co. v. Confluence Holdings Corp.*,
   448 F.3d 1309 (Fed. Cir. 2006) .................................................................. 4

*Orthopedic & Sports Injury Clinic v. Wang Lab., Inc.*,
   922 F.2d 220 (5th Cir. 1991) ..................................................................... 17

*Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.*,
   803 F.2d 1170 (Fed. Cir. 1986) ................................................................. 8

*Ricoh Co., Ltd. v. Quanta Computer Inc.*,
   550 F.3d 1325 (Fed. Cir. 2008),
   *pet. for cert. filed* March 27, 2009 (08-1203) ................................... 6, 11, 27

*Rousseau v. Teledyne Movible Offshore, Inc.*,
   812 F.2d 971 (5th Cir. 1987) ..................................................................... 5

*Rutherford v. Harris County*,
   197 F.3d 173 (5th Cir. 1999) .................................................................. 6, 26

*Scott Fetzer Co. v. House of Vacuums Inc.*,
   381 F.3d 477 (5th Cir. 2004) ................................................................... 23

*Smith v. Transworld Drilling Co.*,
   773 F.2d 610 (5th Cir. 1985) ..................................................................... 5

*Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.*,
   370 U.S. 19 (1962) ................................................................................. 5, 26

*Trell v. Marlee Elecs. Corp.*,
   912 F.2d 1443 (Fed. Cir. 1990) ................................................................. 8

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
   546 U.S. 394 (2006) ..................................................................................... 4

*Univ. of W. Va. v. VanVoorhies*,
   342 F.3d 1290 (Fed. Cir. 2003) ................................................................. 5

*Veritas Operating Corp. v. Microsoft Corp.*,
   562 F. Supp. 2d 1141 (W.D. Wash. 2008) ............................................... 21

**Statutes**

35 U.S.C. § 271(b) ..................................................................................................................... 6, 8

35 U.S.C. § 271(c) .................................................................................................................... passim

**Rules**

FED. R. CIV. P. 50(a) ..................................................................................................................... 1

FED. R. CIV. P. 50(b) .................................................................................................................... 1, 4

FED. R. CIV. P. 59 ......................................................................................................................... 5

**Treatises**

ROBERT L. HARMON, PATENTS AND THE FEDERAL CIRCUIT, § 7.3(c), p. 421 (7th ed. 2005) ......... 8

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Pursuant to FED. R. CIV. P. 50(b), Microsoft Corporation respectfully renews its motion for judgment as a matter of law that no reasonable jury could find that Microsoft has indirectly infringed claims 14, 18 or 20 of the patent-in-suit (U.S. Patent No. 5,787,449).[1]

First, specifically with regard to contributory infringement, Microsoft reurges the same three grounds as presented in Microsoft's motion for summary judgment on this issue.  i4i failed to adduce substantial evidence support the jury's verdict on the issue of contributory infringement, for at least three reasons:

1.     <u>No reasonable juror could find that the admitted noninfringing uses of the accused functionality within Microsoft's Word 2003 and Word 2007 software were not "substantial"</u>:  i4i and i4i's designated technical expert admitted that the accused functionality within the Microsoft software at issue (Word 2003 and Word 2007) can be used without performing the claimed methods.  i4i presented no evidence—other than conclusory and off-point statements by i4i's designated expert—that these admitted noninfringing uses are not substantial.  Consequently, as a matter of law, Microsoft's distribution of this software cannot constitute contributory infringement under 35 U.S.C. § 271(c).  The jury's verdict of infringement cannot be sustained on the basis of contributory infringement.

2.     <u>No reasonable juror could find that Microsoft had pre-suit knowledge that the custom XML feature of Word 2003 or Word 2007 was "especially made or adapted for use in an infringement" of the '449 patent and was not "suitable for substantial noninfringing use"</u>:  Microsoft cannot incur liability for contributory infringement unless and until it has actual knowledge of that patent and at least <u>knowledge of its infringement by others</u>.  *DSU Medical*

---

[1] Microsoft's present motion is limited to indirect infringement—that is, even if i4i presented sufficient evidence to support a finding of infringement from a technical perspective (which Microsoft does not agree, as argued in a separately filed motion), i4i has failed to present sufficient evidence that Microsoft has engaged in acts of indirect infringement.

*Corp. v. JMS Co.*, 471 F.3d 1293, 1303-04, 1306 (Fed. Cir. 2006) (*en banc*) (holding that contributory infringement requires "knowledge of the [patent-in-suit] and knowledge that the component was especially made or adapted for use in an infringing manner"); s*ee Aro Manufacturing Co. v. Convertible Top Replacement Co.* ("*Aro II*"), 377 U.S. 476, 488 (1964) (holding that proof of contributory infringement requires proof that an alleged infringer knew that the combination "was both patented <u>and infringing</u>") (emph. added).   Even if i4i had presented sufficient evidence to sustain a jury verdict of contributory infringement based on Microsoft's alleged knowledge of the '449 patent before suit was filed (which Microsoft does not concede), i4i failed to adduce sufficient evidence that, prior to the commencement of this action, anyone at Microsoft had the requisite <u>knowledge of potential infringement</u>.   This is due in part to the fact that, despite its inside information on Word 2003 back in December 2002, i4i strategically elected not to provide Microsoft with any advance notice of infringement before it filed suit nearly five years later.

3.   <u>No reasonable juror could find that Microsoft sold a "material or apparatus" for use in practicing i4i's claimed processes</u>:  Departing from its previous allegations in this case, i4i tactically chose at trial to refrain from accusing the software that Microsoft distributes to general consumers.  [*See* Trial Tr. (5/13/09 p.m.) at 51-52 (Wagner)]  Instead, i4i limited its case to so-called "business consumers" in which Word is pre-installed on the user's computers.  Microsoft licenses the right to install Word on those computers, but does not itself sell the computers.  Licensing software in this context is not selling a "material or apparatus," as required by the statute.  Thus, as a matter of law, Microsoft does not contributorily infringe because section 271(c) requires a <u>sale</u> of a "<u>material or apparatus</u> for use in practicing a patented process."  35

U.S.C. § 271(c) (emph. added).[2]  Moreover, to the extent that i4i argues that Microsoft should be liable because it "sells" software in the abstract, that argument would contradict the Supreme Court's holding in *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 452 (2007), which recognized that software code is intangible.  It therefore cannot be a "material or apparatus."  i4i's inability to prove that Microsoft "sells" a "material or apparatus" provides yet another reason why the jury's verdict of infringement cannot be sustained on the basis of contributory infringement.

i4i also alleged at trial a second form of indirect infringement—induced infringement—which requires an even higher level of culpable conduct.  Unlike direct infringement, which is a "strict liability" offense, induced infringement cannot be proved unless the patentee proves that Microsoft actually had the <u>specific intent</u> to <u>encourage another's infringement</u>.  *DSU Medical*, 471 F.3d at 1306; *see also Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1354 (Fed. Cir. 2008) (holding that "[p]roof of intent to cause infringing acts is a necessary but not sufficient condition for induced infringement.  Inducement additionally requires 'evidence of culpable conduct, directed to encouraging another's infringement,' *i.e.*, <u>specific intent to encourage infringement</u>") (emph. added).  Inducement therefore also requires more than mere awareness that a patent exists, but—like contributory infringement—requires at least knowledge of potential infringement.  i4i's evidence of knowledge of potential infringement and specific intent to induce others to infringe fell far short of the mark, and the jury's verdict of infringement cannot be sustained on the basis of induced infringement.

Given these fundamental failures of proof on material issues, judgment as a matter of law dismissing i4i's claims of indirect infringement is appropriate.  Removing indirect infringement as a basis for the jury's verdict of "infringement" would have a significant impact on damages,

---

[2] As noted *infra*, Microsoft alternatively raises error in the Court's instruction to the jury on contributory infringement as a ground for a new trial.

because the only evidence presented at trial of direct infringement by Microsoft was the internal use by up to 1306 Microsoft employees.  [Trial Tr. (5/13/09 p.m.) at 102-103 (Wagner)]  Even if such use were proved to constitute direct infringement (which Microsoft does not concede), such use could not support a damages verdict of anywhere near $200 million, and i4i has never argued that it could.  Thus, if the indirect infringement portion of the "infringement" verdict were set aside as a matter of law (which it should be),[3] a remittitur of damages to no more than $127,988[4] would be required, as Microsoft has argued in a separately filed motion for new trial or, alternatively, a remittitur on damages.

## II.    APPLICABLE LAW

### A.    Standards for Judgment as a Matter of Law Under FED. R. CIV. P. 50(b)

Rule 50(b) of the Federal Rules of Civil Procedure provides that where, "for any reason," the court does not grant a party's motion for judgment as a matter of law challenging the sufficiency of the evidence prior to submission of the case to the jury, the party may renew its request after judgment, and the party is entitled to judgment as a matter of law on its renewed motion where the evidence is legally insufficient to support an adverse jury verdict.  FED. R. CIV. P. 50(b); *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 400-01 (2006).  Judgment as a matter of law is properly granted if no "reasonable juror could arrive at a verdict in [the plaintiff's] favor" on its legal claims, or against a defendant on its affirmative defenses.  *McNair v. City of Cedar Park*, 993 F.2d 1217, 1219 (5th Cir. 1993); *see also Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1311-12 (Fed. Cir. 2006).  To avoid judgment as a matter of law, i4i must have introduced at trial "substantial evidence" in support of each

---

[3] Over Microsoft's objection, the Court's verdict form merged all three forms of infringement into a single question.  [*See* Trial Tr. (5/19/09 p.m.) at 23 (Microsoft's objection to form of verdict)]

[4] This number reflects 1306 Microsoft "installations" allegedly used to directly infringe multiplied by i4i's maximum claimed royalty "rate" of $98 per "installation."  [*See* Trial Tr. (5/13/09 p.m.) at 103 (Wagner)]

legal element of its own claims.  *Am. Home Assurance Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004).  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1363 (Fed. Cir. 2004) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

### B.    Standards for New Trial Under FED. R. CIV. P. 59

Pursuant to FED. R. CIV. P. 59, a court may grant a new trial "on all or part of the issues" where the moving party establishes that "the verdict is against the weight of the evidence," or there were "substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940); *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985).[5]  In deciding a motion for a new trial, in contrast to one for judgment as a matter of law, the district court need not conclude that the jury's verdict is not supported by substantial evidence.  Rather, the law in the Fifth Circuit is clear that the district court has broad discretion to weigh the evidence, and "a verdict can be against the 'great weight of the evidence,' and thus justify a new trial, even if there is substantial evidence to support it." *Rousseau v. Teledyne Movible Offshore, Inc.*, 812 F.2d 971, 972 (5th Cir. 1987).

In addition, when liability is argued to the jury on alternative legal theories, one of which is not legally correct or is not a permissible jury question, a general verdict of liability cannot stand, lest it have been based on the incorrect or impermissible theory.  *See, e.g., Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.*, 370 U.S. 19, 29-30 (1962).  Thus, a successful challenge to only one of the alternative legal theories for indirect infringement would

---

[5] Determination of a Rule 59 motion for a new trial is a procedural question not unique to patent law and, as such, is governed by the law of the Fifth Circuit.  *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281, 1289 (Fed. Cir. 2007) (noting that the Federal Circuit uses the law of the regional circuit to review denial of a Rule 59 motion); *Univ. of W. Va. v. VanVoorhies*, 342 F.3d 1290, 1294 (Fed. Cir. 2003) (holding that denial of a Rule 59 motion "is a purely procedural question not unique to patent law").

require a new trial. *See Rutherford v. Harris County*, 197 F.3d 173, 185 (5th Cir. 1999) (remanding for new trial, noting that "the failure of evidence or a legal mistake under one theory of the case generally requires reversal for a new trial because the reviewing court cannot determine whether the jury based its verdict on a sound or unsound theory").

### C.   Standards for Proving Indirect Infringement

i4i bears the burden of proving infringement, including indirect infringement under 35 U.S.C. §§ 271(b) & (c), by a preponderance of the evidence. *See Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991). Where, as here, the patentee has not met its burden, judgment as a matter of law is appropriate. *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007) (reversing denial of judgment as a matter of law on inducement, where the record lacked substantial evidence to support the jury's verdict).

### 1.   Proof of Contributory Infringement Requires Proof of a Lack of Substantial Noninfringing Uses

Part of i4i's burden was to establish that the accused functionality in the software at issue (the so-called "custom XML support" in Word 2003 and Word 2007) has "no substantial noninfringing uses." *See Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004). This burden is premised on the language of the statute, which provides:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and <u>not a staple article or commodity of commerce suitable for substantial noninfringing use</u>, shall be liable as a contributory infringer.

35 U.S.C. § 271(c) (emph. added).

The Federal Circuit's recent decision in *Ricoh*,[6] which purportedly formed the impetus

---

[6] *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325 (Fed. Cir. 2008), *pet. for cert. filed* March 27, 2009 (08-1203).

behind i4i's adding a claim of contributory infringement late into this case, does not salvage i4i's claims, even under i4i's interpretation of that decision.  As i4i concedes, i4i must still "establish the absence of substantial noninfringing uses" for the custom XML feature in Word 2003 and Word 2007.  [Dkt. No. 180, at 3]  Indeed, i4i has acknowledged that "the existence or nonexistence of substantial noninfringing use is a major component of any contributory infringement proof."  [*Id*. at 4]

### 2. Proof of Contributory Infringement Requires Proof of Knowledge of the Infringement

Both forms of indirect infringement require knowledge of the patent allegedly being infringed.  *DSU Medical.*, 471 F.3d at 1303-04, 1306.  i4i did not adduce at trial sufficient evidence to support a finding of liability for either form of indirect infringement because i4i did not provide substantial evidence of both <u>knowledge of the patent</u> as well as at least <u>knowledge of the infringement</u> by Microsoft.

Microsoft notes from the summary judgment briefing on contributory infringement a point of disagreement between the parties on the applicable law—specifically, the additional knowledge component for contributory infringement.  i4i insisted in its opposition to Microsoft's motion for summary judgment that mere knowledge that Word 2003 or Word 2007 could be used in an allegedly infringing manner is sufficient.  [Dkt. No. 291 at 11-12]  i4i is incorrect; notably, i4i failed to address the Supreme Court's decision in *Aro II*, 377 U.S. 476 (1964).  There, the Court focused on the language in section 271(c) that contributory infringement requires a sale of a component of a patented combination "knowing the same to be especially made or especially adapted for use in an infringement of such patent," and held that the patentee must prove that an alleged infringer knew that the combination "was both patented <u>and</u> <u>infringing</u>."  *Id*. at 488 (emph. added).  The requirement of knowledge not only of the patent, but

specifically of the infringement, was squarely before the Court in *Aro II*, and was the subject of extensive discussion.

Aro II remains, of course, good law, and has been consistently followed by the Federal Circuit. *See, e.g.*, *Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986) (citing *Aro II*, and holding that section 271(c) requires the patentee to "show that an alleged contributory infringer knew that the combination for which his components were especially made was both patented and infringing") (emph. added); *see also* ROBERT L. HARMON, PATENTS AND THE FEDERAL CIRCUIT, § 7.3(c) (7th ed. 2005). Although the *DSU Medical* court analyzed the intent component of inducement in depth (to resolve the intra-circuit split), the Federal Circuit did not address the knowledge component for contributory infringement. Rather, the Federal Circuit left intact the pre-existing state of the law on contributory infringement, and noted that the intent requirement for contributory infringement requires proof of "knowledge of the [patent-in-suit] and knowledge that the component was especially made or adapted for use in an infringing manner." *DSU Medical*, 417 F.3d at 1303.[7]

### 3. Proof of Inducement Requires Proof of Specific Intent to Encourage Another's Infringement

An even higher showing of culpable intent is required for proof of induced infringement, which is governed by section 271(b) of the Patent Statute. Section 271(b) provides that whoever "actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Although section 271(b) contains no express requirements of intent or knowledge, the Federal Circuit held *en banc* in *DSU Medical,* 471 F.3d at 1306, that "inducement requires more than just

---

[7] The cases cited by i4i (Dkt. No. 291 at 12) do not support i4i's position. To the contrary, both cases cited by i4i for the proposition that mere "knowledge of the patent-in-suit" suffices under section 271(c) in fact cited *Aro II* and recognized that to succeed on a claim of contributory infringement, the patentee must show that the defendant "knew that the combination for which its components were especially made was both patented and infringing." *Ocean Innovations, Inc. v. Archer*, 483 F. Supp. 2d 570, 583 (N.D. Ohio 2007) (emph. added); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1447 (Fed. Cir. 1990) (remanding for determination of "whether and when" the defendant knew of the existence of the patent).

intent to cause the acts that produce direct infringement.  Beyond that threshold knowledge, the inducer must have an <u>affirmative intent to cause direct infringement</u>" (emph. added).  Thus, whereas contributory infringement requires knowledge of infringement, inducement requires a higher showing—that "the alleged infringer knowingly induced infringement and possessed <u>specific intent</u> to encourage another's infringement." *Id.* (emph. added).  This means that "inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Id.* (emph. added); *see also Kyocera Wireless*, 545 F.3d at 1354.

The high level of intent required by *DSU Medical* is further apparent from the Federal Circuit's approval therein of a jury finding of lack of intent to cause infringement where the alleged infringer "did not believe" that the accused product infringed, despite knowing the allegations of infringement by the patentee.  *DSU Medical,* 471 F.3d at 1306; *see also epicRealm Licensing, LLC v. Autoflex Leasing, Inc.*, 492 F. Supp. 2d 608 (E.D. Tex. 2007) (Folsom, J.) (granting summary judgment in favor of defendant on induced infringement, concluding that the defendant did not "intend to cause actual infringement").  It follows that there cannot be liability for inducement until the alleged infringer not only has actual knowledge of the patent, but also has notice of the patentee's specific infringement allegations.  Mere knowledge that the patent exists cannot be enough to establish the required culpability.

In short, as demonstrated herein, even if the Court were to conclude that i4i presented enough evidence to go to the jury on mere knowledge of the patent, i4i's alleged evidence of the additional requirements—knowledge of infringement (contributory infringement) and specific intent (inducement)—was manifestly insufficient to support a finding of indirect infringement. The jury's general verdict of "infringement" cannot be sustained on the basis of indirect infringement.

## III.    STATEMENT OF ISSUES PRESENTED

1.      Whether judgment as a matter of law in favor of Microsoft should be granted on the issue of contributory infringement, in view of i4i's failure to present substantial evidence that the admitted noninfringing uses of the accused functionality are insubstantial?

2.      Whether judgment as a matter of law in favor of Microsoft should be granted on the issue of pre-suit contributory infringement, in view of i4i's failure to present substantial evidence that Microsoft had knowledge of potential infringement prior to the filing of suit on March 8, 2007?

3.      Whether judgment as a matter of law in favor of Microsoft should be granted on the issue of contributory infringement, in view of  i4i's failure to present substantial evidence that Microsoft sold a "material or apparatus" for use in practicing the claimed method?

4.      Whether judgment as a matter of law in favor of Microsoft should be granted on the issue of induced infringement, in view of i4i's failure to present substantial evidence of Microsoft's specific intent to induce actual infringement by others?

5.      Whether judgment as a matter of law in favor of Microsoft should be granted on the issue of induced infringement, in view of i4i's failure to present substantial evidence that Microsoft had knowledge of potential infringement prior to the filing of suit on March 8, 2007?

6.      Whether judgment as a matter of law in favor of Microsoft should be granted on the issue of indirect infringement, in view of i4i's failure to present substantial evidence of the requisite direct infringement by others?

7.      Whether a new trial should be granted issue of indirect infringement, in view of the jury's verdict being against the great weight of the evidence, in view of the insupportable general verdict of "infringement," and further in view of errors in the court's instructions to the jury?

## IV.   ARGUMENT

### A.   No Reasonable Juror Could Find that Microsoft Contributed to Direct Infringement by Third Parties

i4i's purported basis for adding contributory infringement two years into this litigation was that the Federal Circuit changed the law applicable to contributory infringement in the *Ricoh* decision, requiring courts to focus exclusively on the accused functionality in determining the existence of substantial noninfringing uses.  [*See* i4i Motion for Leave to Amend, Dkt. No. 180] Microsoft contends that such analysis—regardless of whether it was warranted under the facts in *Ricoh*—is illogical on the present facts.  In *Ricoh*, the Federal Circuit placed great weight on the notion that accused infringers should not be able to "escape liability" by tacking noninfringing components onto infringing devices to result in a product that—due to the added components— had noninfringing uses:

> It thus follows that Quanta should not be permitted to escape liability as a contributory infringer merely by embedding that microcontroller in a larger product with some additional, separable feature before importing and selling it.  If we were to hold otherwise, then so long as the resulting product, as a whole, has a substantial non-infringing use <u>based solely on the additional feature</u>, no contributory liability would exist despite the presence of a component that, if sold alone, plainly would incur liability.  Under such a rule, evasion of the protection intended by Congress in enacting § 271(c) would become rather easy.  A competitor who wished to sell hardware that would enable infringement of a patented process could do so without incurring liability for contributory infringement by selling a device that simply embedded the hardware for practicing the patented process within other hardware that also performs another process, or by combining the enabling hardware with other hardware before importing it.

*Ricoh*, 550 F.3d at 1337-38 (emph. in original) (footnote omitted).  The *Ricoh* majority focused on a physically separable material or apparatus and relied heavily on the fact that Quanta's disc drives contained physically separable components whose sole purpose was to infringe.[8]  The

---

[8] *Id*. at 1336 ("For purposes of this appeal, we must accept as true Ricoh's evidence that Quanta's drives contain at least some distinct and separate components <u>used only to perform</u> the allegedly infringing write methods.") (emph. added).

majority repeatedly stressed both the "separate" and "separable" nature of the allegedly infringing material, and that the infringing material could be "sold alone."  *Id.* at 1337.

i4i's reliance on *Ricoh* makes no sense in the context of multi-featured software such as Word 2003 and Word 2007.  In the present case, it can hardly be said that Microsoft tried to escape liability for the specific accused uses of custom XML by embedding that functionality into an established software suite with thousands of other, noninfringing features.  i4i presented no evidence that the accused custom XML functionality is "separable" or could be "sold alone." Indeed, to accept i4i's view of the law would be to answer the question in every instance involving computer software, as the patentee would "accuse" only that portion of the software code that allows performance of the allegedly patented method.

As demonstrated herein, however, even the narrow functionality accused by i4i does have noninfringing uses—as i4i has itself admitted.  Thus, although Microsoft does not agree that *Ricoh* is controlling on the present facts, even if it were applied, i4i's allegations still fail as a matter of law.

## 1. The Accused Infringing Acts Require Use of the Custom XML Feature in Word 2003 and Word 2007 in a Specific Manner

The '449 patent [PX-001] purports to describe and claim a method in which "metacodes" of a document are separated from the content of the document, and held in distinct storage in a structure called a "metacode map."  [*Id.* at 4:3-13]  The '449 patent describes use of Standard Generalized Markup Language ("SGML") as an example of a "metacode language" that may be used in the practice of the claimed invention.  [*Id.* at 4:63-64]  Although it is not mentioned in the '449 patent, i4i also contends that another standard markup language, called eXtensible Markup Language ("XML"), may be used in the practice of the claimed invention.

The software applications at issue in this case, Microsoft Word 2003 and Word 2007,[9] are very richly featured software applications that support a very wide range of word processing capabilities.  [Trial Tr. (5/13/09 p.m.) at 89-91 (Wagner)]  As a result, Word 2003 and Word 2007 contain thousands of uses and features that are not at issue in this case and are not related to the '449 patent.  [*Id.*]  Indeed, the parties stipulated to the fact that "there are many uses of Word 2003 and Word 2007 that are not accused of infringement and that are not at issue in this case." [Trial Tr. (5/13/09 p.m.) at 14:6-8 (Joint Stipulation)]

i4i does not contend that the usual operation of this software necessarily infringes the '449 patent.  Quite the contrary—i4i contends that only use of a very specific feature of this software, in a very specific manner, will infringe the asserted claims.  The relevant feature of Word 2003 and Word 2007, as alleged by i4i, is "custom XML support."  [*E.g.*, Trial Tr. (5/13/09 a.m.) at 27:18-20 (Rhyne)]  But not all uses of "custom XML support" with Word 2003 or Word 2007 were accused; rather, as further discussed herein, i4i accused only a specific manner of use of the custom XML feature in Word 2003 and Word 2007.   In particular, i4i has conceded that opening documents in certain formats, such as those with the extension ".doc" or ".dot," is not an act of infringement, even if those documents contain custom XML.  [Trial Tr. (5/13/09 a.m.) at 28-29 (Rhyne)]

Thus, the accused acts in this case are not the use of XML generally (although i4i devoted a large portion of its evidence at trial to touting the advantages of XML), or the use of custom XML specifically, or even the acts of using Word 2003 or Word 2007 to open documents

---

[9] Only certain versions of Word 2003 are at issue in this case—namely, the version of Word within Office 2003 Professional and the Word 2003 stand-alone version.  i4i has not accused Word in the small business, standard, or student/teacher editions of Office 2003.  [Trial Tr. (5/12/09 p.m.) at 55-56 (Rhyne)] i4i has accused all editions of Word 2007.  i4i also insisted that it did not seek damages for any uses by individuals as opposed to "businesses."  [Trial Tr. (5/13/09 p.m.) at 52 (Wagner)]  This argument appears to have been solely for emotional appeal to the jury, as i4i presented no technical basis for this distinction. Nevertheless, i4i is now estopped from seeking damages based on use by non-business users.

that have custom XML; rather, i4i has accused only use of Word 2003 and Word 2007 to open documents with a specific file format—which <u>excludes</u> the .doc or .dot formats—where the documents contain custom XML.[10]   [Trial Tr. (5/13/09 a.m.) at 117-123 (Rhyne)]   Given the narrow scope of i4i's infringement allegations, i4i's damages expert, Mr. Wagner, had to concede that "[m]ost of the products that are capable of infringing were not used in an infringing manner."  [Trial Tr. (5/13/09 p.m.) at 51:9-13 (Wagner)]

### 2. i4i Has Admitted That the Custom XML Feature in Word 2003 and Word 2007 Has Noninfringing Uses

The very limited nature of i4i's infringement allegations also forced i4i to admit that the specific accused feature in Word 2003 and Word 2007—identified by i4i as "the custom XML feature"—has noninfringing uses.  Dr. Rhyne admitted to several noninfringing uses at trial, including the following acts, which he agreed make use of the custom XML feature in Word 2003 and Word 2007 but are each a "non-infringing use":

> (1)  "opening a .doc file containing custom XML elements (process illustrated in the Gray rebuttal expert report, Exhibit 3, p.1)";
> (2)  "opening a .xml file containing custom XML elements and no content (as shown in Attachment 1:  'Attachment 1 to MSFT 5th ROGs.xml')"; and
> (3)  "creating a new blank document, associating a schema definition file (as described in the Gray rebuttal expert report, Exhibit 3, p.45), adding custom XML elements to the blank document using the XML Structure pane of the Word graphical user interface (as described in Dr. Martin's Expert Report 'Analysis of Custom XML in Microsoft Word,' p. 44), adding content via Word's graphical user interface, and then saving the newly created document as .xml, .doc, .docx, .rtf, .html, or .docm file (as described in Dr. Martin's Expert Report 'Analysis of Custom XML in Microsoft Word,' p. 54)."

[DTX-2384 (i4i's Responses to Microsoft's 5th Interrogs.) at 2384.007-.010; Trial Tr. (5/13/09

---

[10] The very narrow nature of the acts accused of infringement is illustrated by an alleged consumer survey relied upon by i4i designated damages expert, which purports to show that the accused functionality is used in the specific accused manner very rarely—in 2% of Word 2003 and Word 2007 installations over the past 5 years. [Trial Tr. (5/13/09 p.m.) at 107 (Wagner)]  Microsoft has separately moved for a new trial in view of the admission of the Wecker Survey, which is inherently unreliable evidence and cannot support Mr. Wagner's damages analysis.

a.m.) at 29, 117-123 (Rhyne)]

i4i focused its arguments at trial on the alleged insubstantiality of the first noninfringing use listed above—"opening a .doc file containing custom XML elements."  [Trial Tr. (5/13/09 a.m.) at 30-33 (Rhyne)]  i4i's arguments were solely based on a comparison of the noninfringing uses with the allegedly infringing uses.  In particular, Dr. Rhyne opined that because the allegedly infringing uses are "substantial," this means that the admitted noninfringing uses cannot be substantial.  [Trial Tr. (5/13/09 a.m.) at 31 (Rhyne)]  Not only was that argument illogical, but it defied the unrebutted evidence establishing that use of the .doc format with custom XML is viable, is intended by Microsoft, and indeed has its own advantages.  As such, this noninfringing use is hardly "insubstantial."

The advantages of this noninfringing use were unrefuted.  Rob Little, one of the architects of the Microsoft Word software at issue,[11] testified that advantages to using the .doc (binary) format with documents containing custom XML include speed and performance:

> Q.   Can you give me an example of where a user might want to open a dot doc or a dot dot file containing custom XML in Word?
>
> A.   Sure. If you think about -- maybe you -- maybe a form that you fill out a lot, maybe it's a -- maybe it's an application, or maybe it's an inventory form. It's something.  It's got a lot of formatting.  It's got bold.  It's got a lot of stuff in it that makes it look good, but there's also data in the form.  It's -- it's really common for someone to spend the time to make it look really good in Word and mark it up with the XML tags and everything and then save that as a template so that at any future time, the next week, the next month, all you have to do is say, please give me a new document based on this template, and now you've got the form already there, and it's already marked up for you.
>
> Q.   Why would a user want to save it as dot doc or dot, D-O-T?
>
> A.   Well, for one, it's the format that they're used to. It's the format they've been using for years.  It's faster than XML.
>
> Q.   What do you mean it's faster than XML?

---

[11] Trial Tr. (5/18/09 a.m.) at 122 (Little).

> A.      Well, one of the reasons we went with binary for so many years is because it's really fast to load.  It talks the same language as the computer.  XML is -- it's words; it's text.  You have to parse it.  You have to understand all the parts of it.  It's slower, and it's -- sometimes it can be bigger.

[Trial Tr. (5/18/09 a.m.) at 119-120 (Little) (emph. added)]   Thus, far from discouraging use of the custom XML feature of Word 2003 or Word 2007 with .doc documents—an admitted noninfringing use—Microsoft intentionally designed its software to allow the end user to enjoy the advantages and benefits of using custom XML in the familiar .doc format.[12]  i4i presented no evidence to the contrary.

Not only did i4i admit that users can continually open, edit and save these documents with custom XML in the .doc format without infringing the '449 patent, i4i also admitted that these template documents may be created in the first instance without infringing the '449 patent. Specifically, the third admitted noninfringing use identified *supra* is an example of a manner in which such a document may be created:

> [C]reating a new blank document, associating a schema definition file (as described in the Gray rebuttal expert report, Exhibit 3, p.45), adding custom XML elements to the blank document using the XML Structure pane of the Word graphical user interface (as described in Dr. Martin's Expert Report "Analysis of Custom XML in Microsoft Word," p. 44), adding content via Word's graphical user interface, and then saving the newly created document as .xml, .doc, .docx, .rtf, .html, or .docm file (as described in Dr. Martin's Expert Report "Analysis of Custom XML in Microsoft Word," p. 54).

[DTX-2384 (i4i's Responses to Microsoft's 5th Interrogs.) at 2384.007-.010]  As admitted by i4i, after such a document is created, the end users may use such documents and repeatedly open and save them in the .doc format, thus taking advantage of the custom XML features, without performing the acts accused of infringement by i4i.

---

[12] Evidence at trial also demonstrated that Microsoft defaulted to the .doc format for Word 2003 because "that is what 300 million people out there today use and can read."  [PX-212 at 212.002, ¶ 7; Trial Tr. (5/13/09 p.m.) at 155-56 (Wagner)]

In short, i4i admitted to the existence of several noninfringing uses of the custom XML feature within Word 2003 and Word 2007, but presented <u>no evidence</u> at trial to meet its burden of proving that those uses are <u>not</u> "substantial."   At most, i4i presented merely the unsupported speculation of its designated expert, Dr. Rhyne, that simply because the allegedly infringing uses are substantial, this means that the admitted noninfringing uses cannot be substantial.  [Trial Tr. (5/13/09 a.m.) at 31 (Rhyne)]  This statement is illogical and conclusory, and appears to rest on the misconception that a use is not "substantial" if it is not the most common use, or is not as common as an alleged infringing use.  A fatal flaw in this argument is that—as i4i's designated damages expert, Mr. Wagner, had to admit on cross-examination—even i4i's own survey shows that admitted noninfringing uses were even <u>more frequent</u> than the allegedly infringing uses.[13] [Trial Tr. (5/13/09 p.m.) at 164-65 (Wagner)]  Therefore, if the allegedly infringing uses are "substantial," as i4i insists, then certainly the admitted noninfringing uses are at least as substantial.

Aside from the conclusory statements of i4i's designated expert, which cannot comprise substantial evidence to support the jury's verdict,[14] the unrebutted evidence of record demonstrates that the accused feature of Word 2003 and Word 2007 has <u>admitted noninfringing uses</u> that <u>i4i has no evidence to prove are insubstantial</u>.  i4i therefore failed to present sufficient evidence to support a jury verdict on this necessary element of its contributory infringement case, and i4i's claim of contributory infringement must fail as a matter of law.  Judgment as a matter of law removing that theory as possible support for the jury's verdict is appropriate.

---

[13] Microsoft does not admit that the Wecker Survey constitutes reliable evidence.  It is, however, i4i's only "quantitative" evidence of alleged acts of direct infringement by third parties.

[14] *See Orthopedic & Sports Injury Clinic v. Wang Lab., Inc.*, 922 F.2d 220, 225 (5th Cir. 1991) (noting that "affidavits setting forth 'ultimate or conclusory facts . . .' are insufficient to either support or defeat a motion for summary judgment[,]" and that "without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible").

### 3. No Reasonable Juror Could Find that Microsoft Had the Requisite Knowledge for Contributory Infringement Pre-Suit

An independent basis for judgment in favor of Microsoft is that Microsoft cannot incur liability for contributory infringement unless and until it has actual knowledge of that patent and at least <u>knowledge of its infringement by others</u>. *DSU Medical*, 471 F.3d at 1306 (holding that contributory infringement requires "knowledge of the [patent-in-suit] and knowledge that the component was especially made or adapted for use in an infringing manner"); *Aro II*, 377 U.S. at 488 (holding that proof of contributory infringement requires proof that an alleged infringer knew that the combination "was both patented <u>and infringing</u>") (emph. added).

Even if i4i could prove that Microsoft had mere knowledge of the '449 patent before suit was filed (which Microsoft does not concede), i4i failed to adduce sufficient evidence that, prior to the commencement of this action, anyone at Microsoft had the requisite <u>knowledge of potential infringement</u>.  It is undisputed that none of the entities in the succession of ownership of the '449 patent ever communicated to Microsoft, prior to i4i's filing suit, that use of Microsoft's Word 2003 or Word 2007 products infringed the '449 patent.  [Trial Tr. (5/12/09 p.m.) at 13-14 (Thomas); (5/13/09 a.m.) at 111-112 (Rhyne); (5/15/09 p.m.) at 39; 51-52 (Vulpe)]  And this is so, despite the fact that i4i had an advance copy of Word 2003 nearly a year before it was released in October 2003—yet still made no effort to advise Microsoft of any alleged infringement for nearly four years.  [Trial Tr. (5/15/09 p.m.) at 118-119 (Vulpe)]

The only possible bases alleged by i4i for knowledge of the '449 patent by anyone within Microsoft prior to filing suit are two documents:  (1) a version of an i4i "at-a-glance" information sheet that mentioned the i4i patent, which i4i claims to have given to Microsoft at a meeting on April 18, 2001, but which none of the Microsoft employees at the meeting even recall receiving; and (2) a marketing email from i4i that was apparently broadcast, unsolicited, to

an email list but was not specifically targeted to Microsoft.  Neither document could possibly have provided a basis for Microsoft to form any belief about possible infringement.

Turning first to the "at-a-glance document" [PX-013]:  i4i contended that it provided Microsoft with a copy of an "at-a-glance" information sheet, which purportedly listed the patent number, during an April 18, 2001, meeting with representatives from Microsoft Federal.  [Trial Tr. (5/12/09 a.m.) at 76-77 (Tulley)]  i4i's witnesses admitted at trial, however, that there were multiple versions of this information sheet, only some of which contained an explicit reference to the patent number, and they could not confirm whether the version Microsoft received actually contained explicit reference to the '449 patent.  [Trial Tr. (5/12/09 p.m.) at 23-24 (Thomas)]  In particular, Keith Thomas, an i4i witness, confirmed that the "at-a-glance" sheet introduced at trial had <u>changed</u> in May 2001—a month <u>after</u> the meeting with Microsoft—and Mr. Thomas could not, despite his own pre-trial investigation, confirm that the version purportedly given to Microsoft in April 2001 actually had the patent number on it.  [*Id*.]  Moreover, despite deposing several Microsoft employees, i4i never adduced any evidence that any of the Microsoft employees who attended the April 18 meeting actually received a copy of the version of the "at-a-glance" document that i4i introduced into evidence or any other version that contained the patent number.  This was i4i's burden to prove with affirmative evidence; it was not Microsoft's burden to prove the negative.

Second, i4i claimed that it provided Microsoft with notice of the '449 patent when it sent an unsolicited marketing email to a listserv that a Microsoft employee was a part of.  [Trial Tr. (5/13/09 a.m.) at 16-18 (Rhyne)]  However, the listserv email was not affirmatively directed to anyone within Microsoft, or even Microsoft in particular.  Indeed the recipient, Stuart Stuple, noted when forwarding the email that he did not even know which listserv the email was sent to, as he was blind copied on the email.  [*See* PX-49]  Nevertheless, at trial, i4i made much of the

fact that Mr. Stuple forwarded this spam email to two other Microsoft employees, Brian Jones

and Martin Sawicki.  [*See, e.g.*, Trial Tr. (5/13/09 a.m.) at 17-18 (Rhyne)]  i4i did not dispute,

however, that the information conveyed in the email consisted merely of generic marketing

material.  [*See* PX-49]  The email did not explain which features of i4i's advertised product were

purportedly patented, nor did it include a copy of the patent.  [Trial Tr. (5/13/09 a.m.) at 110

(Rhyne)]  Given the sheer volume of marketing materials Microsoft receives on a daily basis, a

few lines in a mass-distributed, unsolicited email received by a Microsoft employee advertising a

product as containing allegedly "patented" technology can hardly be considered sufficient to

imbue knowledge to Microsoft of possible infringement relative to any unidentified Microsoft

product.

### 4.      No Reasonable Juror Could  Find that Microsoft Sold or Offered for Sale a Material or Apparatus for Use in Performing i4i's Claimed Processes

Another key element of i4i's burden of proof is that Microsoft actually sold or offered for

sale something within the scope of section 271(c).  As to this element, Microsoft's manner of

distribution of its software is significant, because the statute provides for liability only in narrow

circumstances that are defined in terms of several required acts.  *See* 35 U.S.C. § 271(c).  One

such required act is selling or offering to sell[15] something very specific, which is defined by the

statute in two different ways, depending on whether the claim at issue is an apparatus claim (that

is, a claim for "a patented machine, manufacturer, combination or composition"), or is a claim

for a "patented process."  *See id.*  With regard to apparatus claims, the statute provides that the

accused infringer must sell a "component" of the patented apparatus, and the component must

further meet other statutory requirements (as also addressed *supra*).  *Id.*  This portion of the

---

[15] Section 271(c) also states that liability may be found for "import[ing]" what is defined in the statute, but importation is not at issue in this case.

statute does not apply in the present case, however, as all of i4i's apparatus claims have been held to be invalid.[16]  Only process claims remain, which are governed by the portion of section 271(c) that provides that the accused infringer must sell a "material or apparatus for use in practicing" the patented process (and must further meet the other statutory requirements).[17]  *Id.*

Moreover, in requiring a sale of a "material or apparatus," section 271(c) plainly contemplates the actual "sale" of something <u>physical</u> that is to be used to perform the claimed process.  i4i's allegations of contributory infringement must therefore fail because i4i cannot identify any physical "material or apparatus" actually used in the accused "custom XML support" processes that was sold by Microsoft.  It is undisputed that Microsoft does not sell the computers or hard drives used by the business customers who i4i claims perform the patented method.  Nor are the transport media for the software—the DVDs—used to run the software.[18]  Moreover, the software being executed by the customer is not tangible, but is an abstract set of information or instructions.  *See AT&T Corp.*, 550 U.S. at 449.[19]

The bottom line is that i4i did not present sufficient evidence to support a jury verdict that Microsoft sold or offered for sale anything that could qualify as a "material or apparatus" that is used in practicing the processes claimed in the '449 patent and that has no substantial

---

[16]  *See* Dkt. No. 111.  Even if the "component" language were deemed to apply, it could not salvage i4i's claims, because software cannot be a "component," as explained by the Supreme Court in a similar context in *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 452 (2007) ("Abstract software code is an idea without physical embodiment … .").

[17]  As noted *infra*, Microsoft also challenges errors in the Court's instructions to the jury on contributory infringement—specifically, the reference to "component" in the instructions instead of the requisite statutory language of "material or apparatus."

[18]  Trial Tr. (5/18/09 a.m.) at 121 (Little).  The software must first be installed from the DVD onto the computer before it can be run by the user.  [*Id.*]

[19]  *See also Veritas Operating Corp. v. Microsoft Corp.*, 562 F. Supp. 2d 1141, 1275 (W.D. Wash. 2008) (applying rationale of *AT&T* to hold that distributing software that is not embodied in a tangible medium is not a sale of a "material or apparatus" under section 271(c), and granting partial summary judgment in favor of Microsoft as to software electronically published by Microsoft)

noninfringing use.  Therefore, this presents yet another basis for granting judgment as a matter of law against i4i's claim that Microsoft has infringed the '449 patent under section 271(c).

### B.  No Reasonable Juror Could Find that Microsoft Had the Requisite Knowledge of Potential Infringement Pre-Suit or Has Ever Had "Specific Intent" To Induce Direct Infringement by Third Parties

The same arguments raised *supra* in connection with contributory infringement regarding lack of knowledge of potential infringement apply with even greater force to the issue of induced infringement, which requires an even higher level of culpable intent.  And even if Microsoft had legally sufficient knowledge of the existence of the '449 patent (which Microsoft denies), or even pre-suit knowledge of the infringement (which i4i has not even tried to establish), i4i has also failed to offer legally sufficient evidence for the jury to find that Microsoft formed the specific intent necessary to induce infringement by others.   At a minimum, Microsoft's substantial defense of invalidity and its compelling noninfringement arguments confirm that Microsoft had a reasonable basis to believe that use of Word 2003 and Word 2007 does not directly infringe any claim of the '449 patent.[20]  These facts, coupled with i4i's scant evidence of knowledge of the patent (*see supra*), soundly undercut i4i's bare allegations of intent.  *DSU Medical*, 471 F.3d at 1306 (approving jury finding of lack of intent to cause infringement where the alleged infringer "did not believe" that the accused product infringed, despite knowing the allegations of infringement by the patentee).  Where, as here, the patentee has failed to adduce substantial evidence of the requisite level of intent, judgment as a matter of law should be granted.  *See epicRealm Licensing*, 492 F. Supp. 2d 608 (granting summary judgment in favor of defendant on induced infringement, concluding as a matter of law that the defendant did not "intend to cause actual infringement").

---

[20] *See also* Microsoft's motions for judgment as a matter of law on these issues, filed concurrently herewith.

22

### C.      No Reasonable Jury Could Find Direct Infringement by Others Based on i4i's Unreliable Survey Evidence

A defendant's liability for indirect infringement must relate to the identified instances of direct infringement.  Plaintiffs who (like i4i) identify individual acts of direct infringement must restrict their theories of vicarious liability—and tie their claims for damages—to the identified act.  *Dynacore Holdings Corp. v. U.S. Philips Corp*., 363 F.3d 1263, 1274 (Fed. Cir. 2004).

In this case, i4i's only alleged "proof" of instances of direct infringement by others was the survey conducted by Dr. Wecker.  But, as Microsoft established in its pre-trial Motion to Strike [Dkt. No. 194] and again at trial,[21] the Wecker Survey suffered from several fatal errors: (1) there was no basis to ascertain whether the respondents understood the convoluted questions, which were presented orally over the telephone; (2) the questions asked about the behavior of others in the respondents' organizations, without confirming personal knowledge; (3) the survey encouraged guessing; (4) the survey failed to use a standard control; and (5) Dr. Wecker manipulated the survey answers, picking the "bigger number" every time.  [Trial Tr. (5/18/09 a.m.) at 37-52 (Simonson, discussing flaws in survey); (5/15/09 a.m.) at 95 (Wecker) ("I always went with the bigger number … .")]    Reliance on such error-laden data is inherently unreasonable.  *See Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 488 (5th Cir. 2004) ("[S]erious flaws in a survey will make any reliance on that survey unreasonable.").

Another, perhaps even more fundamental error, is that the Wecker Survey commingled acts accused of infringement with acts that are undeniably not infringing.  In particular, the survey asked respondents to state whether they "opened an XML document containing 'custom XML,'" but did not in any way distinguish the ways of doing so that are accused in this case from those that undisputedly are not.  Dr. Rhyne agreed that, *inter alia*, the following are ways of

---

[21] Microsoft's co-pending motion for new trial on damages provides a more in-depth analysis of the flaws in the Wecker Survey.

opening an "XML document with Custom XML" that <u>do not infringe</u>: (1) opening a .DOC document with custom XML; (2) opening a .XML document with custom XML as plain text; and (3) opening a .XML document with a custom XSL transform that strips out Custom XML tags.  [Trial Tr. (5/13/09 a.m.) at 29, 117-123 (Rhyne)]  The Wecker Survey did not make any attempt to differentiate these clearly non-accused, noninfringing ways of opening an "XML document" with custom XML from those that are accused.  [Trial Tr. (5/15/09 a.m.) at 78-82 (Wecker); (5/18/09 a.m.) at 44-45 (Simonson)]  The survey estimates consequently provided <u>no basis</u> for the jury to have assessed the extent of actual direct infringement, even according to i4i's own theory, and therefore cannot support a finding of indirect infringement.[22]  *See, e.g.*, *Jackson v. Nat'l Action Fin. Svcs.*, 441 F. Supp. 2d 877, 882 (N.D. Ill. 2006) (excluding opinion on survey evidence, noting that "the key question was drafted in such a way as to render it irrelevant to the issue in this case"), *aff'd*, 505 F.3d 769 (7th Cir. 2007).

In sum, the Wecker Survey  provides no way for the jury to have found how many, if any, of the respondents were admitting to having used Word 2003 or Word 2007 in a manner alleged to infringe.  For all anyone knows, it is possible that <u>every</u> respondent that admitted use of Word 2003 or Word 2007 to "open an XML document with custom XML" was referring to opening the document in a noninfringing manner.

If the survey results are disregarded as evidence of instances of actual direct infringement (as they must be), then the <u>only</u> "evidence" in the record of any possible act of direct infringement by any third party (assuming that i4i's technical infringement arguments withstand post-trial scrutiny) would be the parties' stipulation that "a user" performed the acts accused of

---

[22]  And even if the survey results did support a finding of direct infringement by anyone, they provide absolutely no indication of whether any of that infringement was due to any encouragement or assistance by Microsoft.  [Trial Tr. (5/15/09 a.m.) at 82-83 (Wecker)]  Moreover, nothing in the survey ever asked about whether anyone compared the metacodes with a "predetermined set of criteria," which is required by claim 18.  Thus, even if accepted, the survey could not establish requisite acts of direct infringement of claim 18.

infringement.  [Trial Tr. (5/13/09 p.m.) at 14]  But—even further assuming that i4i were able to establish the requisite acts by Microsoft to contribute to and/or induce such direct infringement—a single act of indirect infringement cannot lead to liability of $200 million on the part of Microsoft.  Nor has i4i made such an outlandish allegation.

In short, as further argued in Microsoft's motion for a new trial on damages, the fatal infirmities in the survey evidence eliminate all evidence of direct infringement by third parties, save the single act addressed in the parties' stipulation.  And because—as noted *supra*—i4i has not adduced sufficient evidence to support a finding that Microsoft contributed to or induced that single act, this provides a further basis for granting judgment as a matter of law in favor of Microsoft on the issue of indirect infringement.

### D. In the Alternative, a New Trial is Warranted

If the Court were to determine that judgment as a matter of law is not warranted on any of the foregoing issues, it should at least grant a new trial on those issues, as the jury's verdict of infringement as to indirect infringement was against the great weight of the evidence.  In the event that the Court grants judgment as a matter of law, but that grant were to be reversed on appeal, Microsoft also moves conditionally for a new trial on any such issue for the same reasons.

Microsoft also raises several other grounds that support a new trial, as discussed below.

### 1. Rejection of Either Theory of Indirect Infringement Requires a New Trial In View of the General Verdict of "Infringement"

Because the case was submitted to the jury for a general verdict on "infringement," over objection by Microsoft,[23] it cannot be determined which theory of liability was relied upon by the jury in rendering its verdict.  The Supreme Court has held that when liability is argued to the jury

---

[23] Trial Tr. (5/19/09 p.m.) at 23 (Microsoft's objection to form of verdict).

on alternative legal theories, one of which is not legally correct or is not a permissible jury question, a general verdict of liability cannot stand, lest it have been based on the incorrect or impermissible theory.  *See, e.g., Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.*, 370 U.S. 19, 29-30 (1962).  This principle has been applied to multiple claims as well as to multiple theories, when one of the claims or theories should not have been submitted to the jury. *See Rutherford v. Harris County*, 197 F.3d 173, 185 (5th Cir. 1999) (remanding for new trial, noting that "the failure of evidence or a legal mistake under one theory of the case generally requires reversal for a new trial because the reviewing court cannot determine whether the jury based its verdict on a sound or unsound theory").  One thing is clear—i4i based its exorbitant damages claim on alleged <u>indirect</u> infringement.  i4i never argued that Microsoft's very limited alleged "direct infringement" could support a damages verdict of $200 million.  Therefore, if the Court determines—based on Microsoft's foregoing arguments—that liability under <u>either</u> theory of indirect infringement cannot stand, then, at a minimum, the Court must order a new trial.

### 2.    Error in the Instructions to the Jury on Induced Infringement Also Requires a New Trial

An additional error, which independently supports a new trial, is the error in instructing the jury on induced infringement.  Specifically, in adopting i4i's proposed instruction on inducement, the Court instructed the jury that it could find induced infringement if Microsoft merely "intended to cause the acts that constitute the direct infringement."  [Court's Final Jury. Instr. (Dkt. No. 323) at p. 12]  Microsoft objected to this instruction as an incorrect statement of the law.  [Trial Tr. (5/19/09 p.m.) at 18:4-9]  Microsoft's objection was overruled.  [*Id*. at 19:5-6]

Consistent with current Federal Circuit authorities, Microsoft proposed the following alternative instruction on the law of induced infringement, which would have properly instructed the jury that i4i was required to prove that Microsoft <u>specifically intended to cause infringement</u> of the '449 patent:

> In order to establish active inducement of infringement, it is not sufficient that the persons that are allegedly induced to infringe themselves directly infringe the claim.  Nor is it sufficient that Microsoft was aware of the acts that allegedly constitute the direct infringement.  Rather, you must find specifically that Microsoft specifically intended to cause infringement of the '449 patent, in order to find inducement of infringement.  If you do not find that Microsoft specifically intended to cause infringement, then you must find that Microsoft has not actively induced the alleged infringement.

[Dkt. No. 320-2 at p. 29]  Microsoft's proposal was derived directly from *Kyocera Wireless*, 545 F.3d at 1354, in which the Federal Circuit admonished that "[p]roof of intent to cause infringing acts is a necessary but not sufficient condition for induced infringement.  Inducement additionally requires 'evidence of culpable conduct, directed to encouraging another's infringement,' *i.e.*, specific intent to encourage infringement."

The error in the jury instructions on inducement necessarily had a prejudicial effect because the difference between merely intending acts that constitute infringement versus specifically intending others to <u>infringe</u> is significant—indeed, adopting the requirement of "specific intent" was part of the rationale for the Federal Circuit's taking up the *DSU Medical* case *en banc*.  *DSU Medical*, 471 F.3d at 1306.  Moreover, as noted *supra*, i4i did not introduce any evidence at trial that Microsoft <u>intended</u> anyone to infringe, nor would such an inference be supported from circumstantial evidence of Microsoft's distribution of its Word 2003 or Word 2007 software, because (as noted *supra*) the parties agree that even the small portion of that software that may be used to carry out the accused functionality has noninfringing uses.  *Cf. Ricoh.*, 550 F.3d at 1343 (remanding for determination of whether specific intent  to encourage infringement could be shown by defendant's incorporating into disk drives separable components whose "sole purpose" was to cause the drives to operate in a manner that infringes the asserted patent claims under normal circumstances).

In sum, the Court's erroneous instruction on inducement warrants a new trial because (1) Microsoft made a proper and timely objection to the jury instructions; (2) the instruction on

inducement was legally erroneous; (3) the error had prejudicial effect; and (4) Microsoft requested an alternative instruction that would have remedied the error.  *See, e.g.*, *Advanced Display Sys. v. Kent State Univ.*, 212 F.3d 1272, 1281 (Fed. Cir. 2000) (remanding for new trial on anticipation in light of error in jury instructions).

### 3.   Error in the Instructions to the Jury on Contributory Infringement Also Requires a New Trial

The Court's instruction to the jury on contributory infringement was also erroneous and warrants a new trial.  Over Microsoft's objection, the Court instructed the jury that contributory infringement may be found if Microsoft "sold, offered for sale or imported … a material component for use in practicing the patented method … ."  [Court's Final Jury. Instr. (Dkt. No. 323) at p. 13]  Microsoft objected to this instruction on the ground that, with regard to method (process) claims, the Patent Statute refers to a "material or apparatus for use in practicing a patented process," not a "component."  *See* 35 U.S.C. § 271(c).  [Trial Tr. (5/19/09 p.m.) at 19:10-20]  Microsoft's objection was overruled.  [*Id*. at 20:9-10]

Consistent with the statutory language, Microsoft had proposed an alternative instruction that defined contributory infringement in terms of a "material or apparatus for use in practicing a patented process."  [Dkt. No. 320-2 at p. 32]  The difference between Microsoft's proposal and that adopted by the Court is material and was prejudicial to Microsoft.  It is undisputed that Microsoft distributes software, not any of the hardware that executes the software.  Therefore, under a proper instruction, i4i would have had to prove that the accused functionality within Word 2003 or Word 2007—assuming it was "sold" by Microsoft—constitutes a "material or apparatus."  This i4i could not do, as a matter of law.  Even if it were possible for software to be a "component," it is clear that software cannot be a "material or apparatus," as the latter clearly contemplates a tangible object.  *See AT&T Corp.*, 550 U.S. at 449 (recognizing that software is not tangible, but is an abstract set of information or instructions).  Thus, the error in the Court's

instructions to the jury—which did not follow the clear statutory language—was prejudicial to Microsoft.  Microsoft's proposed alternative instruction would have remedied this error.  The erroneous instruction to the jury on contributory infringement therefore requires a new trial.

## V.      CONCLUSION:  RELIEF REQUESTED

For the foregoing reasons, Microsoft requests that this Court grant judgment as a matter of law that Microsoft has not indirectly infringed any claims of the '449 patent.   In the alternative, Microsoft requests a new trial.

DATED:  June 4, 2009

*/s/  Kevin Kudlac*

Matthew D. Powers (Lead Attorney)
  CA State Bar No. 104795
  matthew.powers@weil.com
**WEIL GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Phone: 602-802-3000
Fax: 602-802-3100

Kevin Kudlac
  State Bar No. 00790089
  kevin.kudlac@weil.com
**WEIL, GOTSHAL & MANGES LLP**
8911 Capital of Texas Highway, Suite 1350
Austin, TX  78759
Telephone:  512-349-1930
Fax:  512-527-0798

David Lender
*admitted pro hac vice*
  david.lender@weil.com
Paul Torchia
*admitted pro hac vice*
  paul.torchia@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 5th Avenue
New York, NY  10153
Telephone:  212-310-8000
Fax:  212-310-8007

Eric Findlay
  State Bar No. 00789886
  efindlay@findlaycraft.com
**FINDLAY CRAFT**
6760 Old Jacksonville Hwy Suite 101
Tyler, TX 75703
Telephone: 903-534-1100
Fax: 903-534-1137

**ATTORNEYS FOR DEFENDANT
MICROSOFT CORPORATION**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, the foregoing document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A). Pursuant to FED. R. CIV. P. 5(d) and Local Rule 5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 4th day of June, 2009.


        /s/  *Margaret Masters*
        Margaret Masters

31