**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **i4i LIMITED PARTNERSHIP and** | § | |
| **INFRASTRUCTURES FOR** | § | |
| **INFORMATION INC.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO. 6:07-CV-113 LED** |
| **v.** | § | |
| | § | |
| **MICROSOFT CORPORATION,** | § | |
| | § | |
| **Defendant.** | § | |

**MICROSOFT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OF**
**OBVIOUSNESS OR, IN THE ALTERNATIVE, FOR A NEW TRIAL ON BOTH**
**<u>ANTICIPATION AND OBVIOUSNESS, IN LIGHT OF RITA, DEROSE</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 3

I.   The Rita SGML Editor and the DeRose Patent are Prior Art ............................ 3

II.  Microsoft Introduced Clear and Convincing Evidence That The RITA SGML
     Editor Practiced All of the Limitations of the Asserted Claims ...................... 4

III. Microsoft Introduced Clear and Convincing Evidence That The DeRose Patent
     Disclosed All of the Limitations of the Asserted Claims ................................. 7

IV.  The Only Limitations i4i Contends are Absent from either RITA or DeRose are
     Disclosed By the Admitted Prior Art Kugimiya Patent .................................... 9

STATEMENT OF ISSUES PRESENTED ........................................................... 10

APPLICABLE LAW ......................................................................................... 11

I.   Standards for Judgment as a Matter of Law Under Fed. R. Civ. P. 50(b) ........ 11

II.  Standards for New Trial Under Fed. R. Civ. P. 59 ........................................ 11

III. Standards for Determining Obviousness ..................................................... 12

ARGUMENT .................................................................................................... 13

I.   The 449 Patent is Obvious In Light of the Combination of either RITA or DeRose
     with the Kugimiya patent ............................................................................ 13

II.  i4i's Evidence of Secondary Considerations Cannot Outweigh the Compelling
     Evidence of Obviousness in This Case .......................................................... 14

III. In the Event the Court Declines to Invalidate the 449 Patent as a Matter of Law,
     Microsoft is Entitled to a New Trial on both Anticipation and Obviousness ......... 15

CONCLUSION:  RELIEF REQUESTED ........................................................... 16

## TABLE OF AUTHORITIES

Page

### CASES

*Agrizap, Inc. v. Woodstream Corp.*,
  520 F.3d 1337 (Fed. Cir. 2008)......................................................................................14

*Am. Home Assurance Co. v. United Space Alliance*,
  378 F.3d 482 (5th Cir. 2004) .........................................................................................11

*Boston Scientific Scimed, Inc. v. Cordis Corp.*,
  554 F.3d 982 (Fed. Cir. 2009).................................................................................13, 14

*Consol. Edison Co. v. NLRB*,
  305 U.S. 197 (1938).......................................................................................................11

*Eli Lilly & Co. v. Aradigm Corp.*,
  376 F.3d 1352 (Fed. Cir. 2004)......................................................................................11

*Immunocept, LLC v. Fulbright & Jaworski, LLP*,
  504 F.3d 1281 (Fed. Cir. 2007)......................................................................................11

*KSR Int'l Co. v. Teleflex, Inc.*,
  550 U.S. 398 (2007).................................................................................................12, 15

*McNair v. City of Cedar Park*,
  993 F.2d 1217 (5th Cir. 1993) .......................................................................................11

*Montgomery Ward & Co. v. Duncan*,
  311 U.S. 243 (1940).......................................................................................................11

*Muniauction, Inc. v. Thomson Corp.*,
  532 F.3d 1318 (Fed. Cir. 2008).................................................................................13, 14

*Old Town Canoe Co. v. Confluence Holdings Corp.*,
  448 F.3d 1309 (Fed. Cir. 2006)......................................................................................11

*Rousseau v. Teledyne Movible Offshore, Inc.*,
  812 F.2d 971 (5th Cir. 1987) .........................................................................................12

*Sheila's Shine Products, Inc. v. Sheila Shine Inc.*,
  486 F.2d 114 (5th Cir. 1973) .........................................................................................12

# TABLE OF AUTHORITIES

**Page**

*Smith v. Transworld Drilling Co.*,
    773 F.2d 610 (5th Cir. 1985) ............................................................................................11

*Univ. of W. Va. v. VanVoorhies*,
    342 F.3d 1290 (Fed. Cir. 2003).........................................................................................11

## STATUTES

35 U.S.C. § 102(b), 102(e).........................................................................................................1-4

35 U.S.C. § 103......................................................................................................................1, 12, 16

Microsoft Corporation moves for judgment as a matter of law that claims 14, 18, and 20 of U.S. Patent No. 5,787,449 ("the 449 patent") are invalid under 35 U.S.C. § 102(b), 102(e), and/or 103 in light of: 1) the offer for sale and sale of the prior art Rita SGML editor and the publication of prior art references describing it, alone, or in combination with the admitted prior art Kugimiya patent (US 5,587,902) and 2) the prior art DeRose patent (US 6,101,512), alone, or in combination with the Kugimiya patent.[1]  In the event that the Court declines to enter judgment as a matter of law, Microsoft alternatively moves for a new trial of both anticipation and obviousness under Fed. R. Civ. P. 59 because the verdict is against the great weight of the evidence.

## **INTRODUCTION**

The evidence presented at trial concerning the Rita, DeRose, and Kugimiya references presents a compelling case anticipation and an irrefutable case of obviousness.  i4i sought and obtained a broad claim construction from the Court in this case.  At trial, i4i asserted an even broader theory of infringement than the Court's construction supported, and the jury apparently accepted it.  The asserted claims, as construed by the Court and applied by i4i, require little more than the process of importing a document with embedded codes, compiling a map of these codes (or their names), in memory with references to their location in mapped content, providing a menu of those codes, and either displaying the document on the screen or saving it to disk. There can be no question that this process has long been practiced in the prior art, and if that i4i's broad theory of infringement stands, its patent must be invalid.

---

[1] As Microsoft asserted in its Proposed Pretrial Order, the question of obviousness is for the Court to decide.  The jury verdict of no invalidity in this case is, at the very most, advisory on the issue of obviousness.  Therefore Microsoft alternatively moves the Court to enter a legal finding of obviousness under Fed. R. Civ. Procedure 52.

Indeed, even i4i acknowledges that the only limitations that i4i asserts are absent from Rita and DeRose, a "metacode map" and its corresponding "mapped content," are present in Kugimiya, which was the principal reference before the patent examiner.  In fact, i4i's expert acknowledged at trial that Rita and DeRose both separate metacodes from content, and store those codes in data structures with pointers back to the content.  i4i's only argument for validity over these references was that these structures do not constitute "metacode maps" because they stored tag information in a "tree" data structure, and that accordingly there is no corresponding "mapped content."  That argument is a complete red herring, as there is no requirement of any kind in the Court's claim construction that would preclude the "metacode map" limitation from being satisfied by a tree structure.  Indeed, i4i admits that its own products, which purportedly embody the 449 patent, also use a tree structure.  Even if i4i's argument were accepted, however, it does not avoid invalidity, as metacode maps were undisputedly known in the prior art.  Indeed, Mr. Vulpe, one of the two 449 patent inventors, admitted at trial that Kugimiya disclosed the concept of a metacode map, and that a metacode map was not his invention.

i4i's own attempts to distinguish these references establish the obviousness of the combination of their teachings with the admitted "metacode map" of Kugimiya.  There is no dispute that Rita, DeRose, and Kugimiya, are all references in the field of SGML document processing.  They are also directed at a similar problem, the separation of metacodes and mapped content.  The testimony of i4i's expert that both DeRose and Rita separate content and metacodes establishes this fact, irrespective of his unsupported assertion that they do it using slightly different data structures than the map disclosed in the specification of the 449 patent.  Even if i4i's attempt to draw an illusory distinction between "trees" and "maps" is accepted for purposes of determining anticipation, it cannot be a basis for avoiding obviousness.  These structures are undisputedly interchangeable means to the same end of separating codes and content, described

in similar references in the same field of endeavor.  Because the evidence proffered by both sides shows that the combination of these references would be obvious, the 449 patent should be held invalid as a matter of law.

## **FACTUAL BACKGROUND**

### I.     **The Rita SGML Editor and the DeRose Patent are Prior Art**

The Rita SGML editor is a prior art software application that enabled users to create and edit tagged documents, such as SGML documents.[2]  It provided a user interface in which the SGML tags would be displayed in a window separate from the text of the document, allowing for independent access to either the SGML tags or the document text.[3]  The Rita SGML editor is disclosed in a number of scholarly articles published in 1987, 1990, and 1991,[4] all dated well before the June 2, 1993, critical date.  A copy of the Rita editor was sold in the United States as early as September 1989.[5]  Therefore, the Rita SGML editor is prior art under 35 U.S.C. § 102(b).

The DeRose patent is a prior art patent that discloses a system for generating, analyzing, and navigating electronic documents containing markup, in particular SGML documents.[6]  The analysis of SGML documents taught by DeRose entails the separation of SGML tags from the content of the document into separate data structures.[7]  The DeRose patent has a priority date of

---

[2] *See, e.g.*, DTX-2075 (Sept. 1991 Rita publication) at 1.

[3] *See id.* at 6-7; Trial Tr. (5/18/09 p.m.) at 144:6-18 (Gray).

[4] *See* DTX-2075 (1991 Rita publication); DTX-2076 (1990 "Experiences with RITA" publication); DTX-2077 (1990 Rita 'Document Class Generator" publication); DTX-2078 (1987 Rita publication); and DTX-2079 (1990 Rita "Tutorial and Reference" publication).

[5] *See* DTX-2080 (Rita sales correspondence) at 2; Trial Tr. (5/19/09 a.m.) at 42:9-22, 46:8-47:3 (Cowan).

[6] *See, e.g.,* DTX-2179 (DeRose patent) at 3:18-32.

[7] *See, e.g.*, DTX-2179 (DeRose patent) at 10:36-13:2; Trial Tr. (5/18/09 p.m.) at 154:15-24 (Gray).

July 19, 1991.[8]  i4i has not disputed that the DeRose patent is prior art to the 449 patent under 35 U.S.C. § 102(e).

## II.   Microsoft Introduced Clear and Convincing Evidence That The RITA SGML Editor Practiced All of the Limitations of the Asserted Claims

The asserted claims 14, 18, and 20, of the 449 patent are directed toward a method of processing electronic documents containing embedded codes and content.  The 449 specification describes the invention in terms of SGML documents and refers to the SGML tags as "metacodes."[9]  As construed by the Court and applied by i4i at trial, the claimed method first requires the opening of a document containing metacodes and content.  After opening the document, the claimed method entails providing a "menu of metacodes"[10] as well as compiling a "map of metacodes," which, under i4i's theory, is a data structure or collection of data structures that contain the metacodes and the locations in the mapped content where they exert their effect. The claims then require "providing the document" that has been processed by either saving it to disk or displaying it to the user.  Finally, claim 18, which depends on claim 14, involves an additional step of comparing the metacodes in the map against a predetermined set of criteria, which i4i contends would be satisfied by comparing the metacodes against a schema or Document Type Definition (DTD).

As Microsoft clearly demonstrated at trial, the Rita SGML editor practiced all of these steps.  With respect to opening a document containing metacodes and content, Mr. Gray explained that the Rita SGML editor opens an SGML input file to begin the process of separating metacodes and content.[11]  The Rita publications also describe the various manners in which

---

[8] DTX-2179 (DeRose patent) at Related U.S. Application Data.

[9] *See* DTX-2001 (449 patent) at 8:49-53.

[10] Providing a "menu of metacodes" is only a limitation of claims 14 and 18.

[11] Trial Tr. (5/18/09 p.m.) at 144:21-145:5, 151:8-22 (Gray).

documents can be loaded into the Rita SGML editor[12] and expressly stated that the Rita system is designed for SGML and GML documents that "contain a combination of text and tags" and allows users to "edit tagged documents which are structurally correct as they are initially entered into a computer."[13]

After loading the SGML documents containing tags and content, a "menu of metacodes" is provided by the Rita SGML editor in a separate pane at the bottom of the user interface.[14] This menu displays the metacodes or SGML tags that are available for (valid) insertion into a given portion of the document.[15]   A function within the Rita software called Display Object Menu is used to populate the menu displayed at the bottom of the Rita screen.[16]

In addition to providing a "menu of metacodes," the Rita SGML editor also compiles a separate "map of metacodes" with pointers to where the metacodes are to exert their effect in the content.  Specifically, upon loading an SGML document, the Rita software scans the document for content and metacodes.  The content is put into a "line list," or document line data structure and, in parallel, the SGML tags are put into separate data structures known as the "field list" and "node tree."[17]   As the Rita publications make clear, the "field list contains pointers into the text…and maps the internal view of the document as a tree to the linear view of the user."[18]   At the source code level, the document is scanned using the "ScanTagorText" function in order to

---

[12] *See* DTX-2079 (1990 Rita "Tutorial and Reference" publication) at 131-35.

[13] DTX-2075 (1991 Rita publication) at 1.

[14] *See, e.g.*, DTX-2079 (1990 Rita "Tutorial and Reference" publication) at 82-83.

[15] Trial Tr. (5/18/09 p.m.) at 146:5-23 (Gray).

[16] *Id.*

[17] *Id.* at 145:8-22, 146:24-148:21.

[18] DTX-2075 (1991 Rita publication) at 10; *see also* DTX-2076 (1990 "Experiences with RITA" publication) at 7-8.

differentiate the text from the start tags and end tags, whereupon the "PSPush" function places the text and metacodes into their respective data structures.[19]

The final step of "providing the document" that has been processed as a map of metacodes and mapped content is achieved in the Rita system by saving the document to the computer hard drive in GML or SGML format using the "Save_document" function.[20]  The document can also be provided to the user through the Rita user interface, which displays a metacode map containing a list of metacode names in a pane on the left side of the screen and displays the mapped content in a separate pane on the right side of the screen.[21]

Finally, with respect to dependent claim 18, the additional step of "comparing" the metacode map against a predetermined set of criteria is carried out in the Rita SGML editor by enforcing a set of rules based upon the DTD of the document.[22]  For example, if a particular tag is selected in the left pane of the Rita screen, a list of metacodes that can be validly inserted (based upon the rules of the DTD) into the corresponding portion of the document will be displayed in the menu at the bottom of the screen.[23]  Furthermore, the Rita publications expressly state that both "Rita's own document class descriptions and those defined in an SGML Document Type Definition (DTD)" can be used to validate documents in the Rita system.[24]

---

[19] Trial Tr. (5/18/09 p.m.) at 148:10-21 (Gray).

[20] *Id.* at 148:22-149:8, 152:20-153:7.

[21] *See, e.g.*, DTX-2079 (1990 Rita "Tutorial and Reference" publication) at 18.

[22] Trial Tr. (5/18/09 p.m.) at 149:23-150-11 (Gray).

[23] *Id.*; *see also* DTX-2079 (1990 Rita "Tutorial and Reference" publication) at 82-83.

[24] DTX-2075 (1991 Rita publication) at 9.

**III.    Microsoft Introduced Clear and Convincing Evidence That The DeRose Patent Disclosed All of the Limitations of the Asserted Claims**

The documentary and testimonial evidence presented at trial clearly demonstrates that the DeRose patent discloses the claimed method of the 449 patent.  As discussed more fully below, the DeRose patent, like the Rita SGML editor, teaches a method involving opening a document that contains content and embedded codes, processing the document in a way that produces a "menu of metacodes" and compiles a "map of metacodes" separate from the content, and then "providing the document" to the user by saving the metacode map and mapped content to disk. The DeRose reference further teaches the step of "comparing" the metacode map against a set of predetermined criteria recited in dependent claim 18.

Just as is the case with the 449 patent, the preferred embodiment described in the DeRose patent is specifically directed toward opening SGML documents containing content and metacodes.  The DeRose patent explicitly states that "the present invention receives as its input a document, represented in electronic form which includes text content, descriptive markup and possibly non-text content,"[25] and "provides the capability for rendering documents which comply with the SGML standard."[26]

The claimed step of providing a "menu of metacodes" is disclosed by the DeRose patent as part of the processing of the SGML document.  As Mr. Gray explained, the DeRose specification teaches the construction of a "fully-qualified name table" that contains the names of the SGML tags contained in the inbound SGML document.[27]  This table represents the menu of metacodes that would be available to other applications.[28]

---

[25] DTX-2179 (DeRose patent) at 7:60-63.

[26] *Id*. at 8:40-42.

[27] Trial Tr. (5/18/09 p.m.) at 156:5-157:4 (Gray); DTX-2179 (DeRose patent) at 10:3-4, 50-53.

[28] Trial Tr. (5/18/09 p.m.) at 156:5-19 (Gray).

The invention taught by DeRose also compiles a "map of metacodes" separate from the mapped content. Mr. Gray walked the jury through the steps in the DeRose patent by which the SGML input document is parsed to identify each start tag, end tag, and text element.[29] As the SGML tags and text elements are identified, entries are created in a separate data structure known as the "element directory," which represents a "map of metacodes" containing the tag names and pointers to locations in the text where they take effect.[30] The "element directory" is depicted in Figure 6 of the DeRose patent. The text itself is maintained in memory separate from the "element directory" in what the DeRose specification refers to as the "open text file."[31]

DeRose also discloses "providing the document," which contains both the metacode map and mapped content, by saving the processed document to disk.[32] The DeRose specification teaches that "the element directory and fully-qualified name table may be stored and accessed efficiently on a random-access medium such as a disk,"[33] while the document text is "saved in the open text file,"[34] thus providing the processed document to the user.

Finally, the DeRose invention includes "comparing" the metacode map with a predetermined set of criteria as required by dependent claim 18. As the inbound SGML document is parsed and each tag is identified, it is compared against the list of tags in the "fully-qualified name table."[35] This step is performed in order to determine whether a particular tag

---

[29] Trial Tr. (5/18/09 p.m.) at 157:5-158:6 (Gray); DTX-2179 (DeRose patent) at 10:36-13:2.

[30] *Id.*

[31] Trial Tr. (5/18/09 p.m.) at 155:15-156:1 (Gray); DTX-2179 (DeRose patent) at 10:50-53, 12:45-54.

[32] Trial Tr. (5/18/09 p.m.) at 158:22-159:6, 162:12-22 (Gray).

[33] DTX-2179 (DeRose patent) at 12:65-13:2.

[34] *Id.* at 12:45-48.

[35] Trial Tr. (5/18/09 p.m.) at 159:20-160:15 (Gray); DTX-2179 (DeRose patent) at 11:49-58, Fig. 7.

already exists in the "fully-qualified name table" so that any new tags can be added and existing tags are not duplicated.[36]

## IV.   The Only Limitations i4i Contends are Absent from either RITA or DeRose are Disclosed By the Admitted Prior Art Kugimiya Patent

i4i's only response to all of this compelling evidence of invalidity is that the tree structures in Rita and DeRose are not "metacode maps" under the 449 patent, and that the content pointed to by these tags in these trees is not "mapped content."[37]   Dr. Rhyne, i4i's technical expert, acknowledged during his direct examination that these trees, like the metacode map described in the 449 specification, separate metacodes from the content.[38]   He also acknowledged that the data structures containing the SGML tags contained pointers from those tags to the content.[39]

The Court's constructions of the "metacode map" and "mapped content" terms contain no requirement that would provide any basis for Dr. Rhyne's argument that a system using a tree could not practice the patent.   Indeed, Dr. Rhyne himself has opined that i4i's own products, which use a tree structure to interrelate metacodes and mapped content, practice the claims of the 449 patent.[40]

In any event, there is no dispute in this case that Kugimiya disclosed a metacode map, and i4i's own evidence indicates this map would be interchangeable with the tree structures in Rita and DeRose.   In the file history, the applicants themselves acknowledged that Kugimiya had

---

[36] *Id.*

[37] Trial Tr. (5/19/09 p.m.) at 34:25-44:22 (Rhyne).

[38] *Id.* at 38:7-18.

[39] *Id.* at 35:24-37:4.

[40] *Id.* at 72:1-14.

a metacode map.[41]   Moreover, both Dr. Rhyne and Mr. Vulpe admitted that Kugimiya disclosed a metacode map.[42]   Finally, Mr. Vulpe acknowledged that the metacode map was not his invention.[43]   Dr. Rhyne's own testimony, disused above, demonstrates that the tree structures of Rita and DeRose can be used for the same purpose—separating metacodes from content—as the metacode map of Kugimiya.

Kugimiya is an extremely close reference to Rita and DeRose.   All three references are systems for processing SGML documents, and they operate in similar manner.[44]   In fact, the applicants only bases for distinguishing Kugimiya before the patent office was that it did not persist the metacode map long enough for the user to manipulate the metacodes, and that Kugimiya did not disclose a menu of metacodes.[45]   i4i has not rebutted Microsoft's evidence that both of these limitations, as discussed above, are present in both Rita and DeRose, or that all the other limitations of the claims are found in all three references.

## STATEMENT OF ISSUES PRESENTED

1.     Whether the 449 patent is obvious as a matter of law in light of the Rita references, alone, or in combination with the Kugimiya patent.

2.     Whether the 449 patent is obvious as a matter of law in light of the DeRose Patent alone, or in combination with the Kugimiya patent.

---

[41] DTX 2002 (449 patent file history) at 123.

[42] Trial Tr. (5/15/09 p.m.) at 66:3-67:22 (Vulpe); Trial Tr. (5/19/09 p.m.) at 89:21-90:25 (Rhyne).

[43] Trial Tr. (5/19/09 p.m.) at 89:4-91:15 (Rhyne); Trial Tr. (5/15/09 p.m.) at 66:3-67:15 (Vulpe).

[44] *See* DTX-2075 (1991 Rita publication) at 1; DTX-2179 (DeRose patent) at 3:26-29; DTX-2364 (Kugimiya patent) at 7:23-35.

[45] DTX 2002 (449 patent file history) at 123; *see also* Trial Tr. (5/15/09 p.m.) at 66:3-67:15 (Vulpe).

3.      Whether Microsoft is entitled to a new trial in view of the jury's verdict on

validity being against the great weight of the evidence.

## APPLICABLE LAW

### I.      Standards for Judgment as a Matter of Law Under FED. R. CIV. P. 50(b)

Judgment as a matter of law is properly granted if no "reasonable juror could arrive at a

verdict in [the plaintiff's] favor" on its legal claims, or against a defendant on its affirmative

defenses.  *McNair v. City of Cedar Park*, 993 F.2d 1217, 1219 (5th Cir. 1993); *see also Old*

*Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1311-12 (Fed. Cir. 2006).  To

avoid judgment as a matter of law, i4i must have introduced at trial "substantial evidence" in

support of each legal element of its own claims.  *Am. Home Assurance Co. v. United Space*

*Alliance*, 378 F.3d 482, 487 (5th Cir. 2004).   "Substantial evidence" is "'more than a mere

scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'"  *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1363 (Fed. Cir. 2004)

(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

### II.      Standards for New Trial Under FED. R. CIV. P. 59

Pursuant to FED. R. CIV. P. 59, a court may grant a new trial "on all or some of the issues"

where the moving party establishes that "the verdict is against the weight of the evidence," or

there were "substantial errors in admission or rejection of evidence or instructions to the jury."

*Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940); *Smith v. Transworld Drilling*

*Co.,* 773 F.2d 610, 612-13 (5th Cir. 1985).[46]  In deciding a motion for a new trial, in contrast to

---

[46] Determination of a Rule 59 motion for a new trial is a procedural question not unique to patent law and, as such, is governed by the law of the Fifth Circuit.  *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281, 1289 (Fed. Cir. 2007) (noting that the Federal Circuit uses the law of the regional circuit to review denial of a Rule 59 motion); *Univ. of W. Va. v. VanVoorhies*, 342 F.3d 1290, 1294 (Fed. Cir. 2003) (holding that denial of a Rule 59 motion "is a purely procedural question not unique to patent law").

one for judgment as a matter of law, the district court need not conclude that the jury's verdict is not supported by substantial evidence.  Rather, the law in the Fifth Circuit is clear that the district court has broad discretion to weigh the evidence, and "a verdict can be against the 'great weight of the evidence,' and thus justify a new trial, even if there is substantial evidence to support it." *Rousseau v. Teledyne Movible Offshore, Inc.*, 812 F.2d 971, 972 (5th Cir. 1987).

## III.    Standards for Determining Obviousness

Under 35 U.S.C. § 103, a patent is invalid if the differences between the claimed invention and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art...."  Simply combining known pieces of technology found in the prior art can render a patent obvious.  As the Supreme Court recently held,  "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 416 (2007).

"The ultimate judgment of obviousness is a legal determination."  *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 427 (2007).  "Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *Id.*  Moreover, because of the general verdict on validity in this case, there are no factual findings by the jury to which the court must defer.  Under Fed. R. Civ. Procedure 52, the Court should enter its legal conclusions on the ultimate issue obviousness with little deference to the jury's verdict, which should only be viewed as advisory on the question of obviousness. *See Sheila's Shine Products, Inc. v. Sheila Shine Inc.*, 486 F.2d 114, 122 (5th Cir. 1973) (noting that trial courts are "not bound by the findings of the advisory jury, which it is free to adopt in whole or in part or to totally disregard")   Alternatively, under Fed. R. Civ. Procedure 50, where the Court is

to give deference to underlying factual determinations made by the jury (none of which were made here), the ultimate question of obviousness is still for the Court to decide. *See Boston Scientific Scimed, Inc. v. Cordis Corp.*, 554 F.3d 982, 992 (Fed. Cir. 2009) (citing *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1324-28 (Fed. Cir. 2008) (court is "free to override the jury's legal conclusion on the ultimate question of obviousness without deference").

## ARGUMENT

**I.**    **The 449 Patent is Obvious In Light of the Combination of either RITA or DeRose with the Kugimiya patent**

It cannot be disputed that the combination of either the Rita or DeRose references with the Kugimiya patent discloses all of the limitations of the asserted claims of the 449 patent.  As described above, while i4i only contends that the claimed "map of metacodes" is missing from both the RITA and DeRose references, both the inventors and i4i's designated experts have unequivocally conceded that Kugimiya discloses a map of metacodes.[47]  Similarly, while the applicants distinguished Kugimiya during prosecution on the grounds that it did not disclose a "menu of metacodes" or persistent storage of the metacode map, the unrebutted evidence Microsoft presented at trial, discussed above, show that both the Rita and the DeRose references provide both of these teachings.

It would have been obvious to combine either the Rita references or the DeRose patent with the Kugimiya patent.  It is undisputed that all three of these references are systems for processing and manipulating SGML encoded documents.  It is also undisputed that both systems were also specifically designed to separate metacodes from content.  In fact, Dr. Rhyne himself testified that Rita and DeRose separate metacodes from content, and only argued that these

---

[47] *See, e.g.*, DTX-2002 (449 patent file history) at 123-24, 133; Trial Tr. (5/15/09 p.m.) at 66:3-67:22 (Vulpe); Trial Tr. (5/19/09 p.m.) at 89:21-90:25 (Rhyne); *see also* Trial Tr. (5/20/09) at 146:14-17 (Rappaport).

references did not anticipate because they performed this separation with a "tree" rather than a "map."   Given that both of these references are undisputedly targeted at precisely the same problem of separating metacodes from content, and given that it is undisputed that both trees and maps are alternative ways, well known in the art, of achieving this separation, there can be no question that it would be obvious to combine these references.

## II.     i4i's Evidence of Secondary Considerations Cannot Outweigh the Compelling Evidence of Obviousness in This Case

In attempting to rebut Microsoft's obviousness arguments at trial, i4i presented testimony from Dr. Rhyne on several secondary considerations of non-obviousness.   In its co-pending motion regarding invalidity of the 449 patent in light of the SEMI S[4] system, Microsoft has shown that these secondary considerations are contradicted, rather than supported, by the great weight of the evidence.[48]   Furthermore, none of the purported evidence of secondary considerations that i4i offered was specifically tied to either the accused functionality or the method of the asserted claims.   In any event, even if the Court were to accept that i4i has put forth sufficient evidence of secondary considerations, those secondary considerations cannot, as a matter of law, defeat the overwhelming *prima facie* evidence of obviousness in this case.   *See Boston Scientific Scimed,* 554 F.3d at 992 ("the evidence on secondary considerations [is] inadequate to overcome a final conclusion that [the claim] would have been obvious."); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d at 1327 ("to the extent that some of the factors arguably meet the nexus requirement, their relationship to the claims is simply too attenuated to overcome the strong prima facie demonstration by [the accused infringer] that the claims are obvious"); *Agrizap, Inc. v. Woodstream Corp.*, 520 F.3d 1337, 1344 (Fed. Cir. 2008) ("the

---

[48] Microsoft incorporates herein by reference its discussion of i4i's evidence of secondary considerations set forth in its Motion for Judgment of a Matter of Law or Alternative Motion for New Trial that the 449 Patent Invalid in Light of the SEMI S[4] system.

objective evidence of nonobviousness simply cannot overcome such a strong prima facie case of obviousness").

### III.    In the Event the Court Declines to Invalidate the 449 Patent as a Matter of Law, Microsoft is Entitled to a New Trial on both Anticipation and Obviousness

In the event the Court declines to invalidate the patent as a matter of law, Microsoft is entitled to a new trial.  For the reasons described above, any determination of validity in this case would be against the great weight of the evidence.  i4i's only rebuttal to Microsoft's clear showing, discussed above, that all elements of the claims are practiced by both Rita and DeRose amounted to an illusory distinction between "trees" and "maps" that finds no support in the Court's claim construction.  Similarly, i4i's only rebuttal to Microsoft's showing of obviousness consisted of expert testimony concerning secondary consideration that is contradicted by all of the documentary evidence.

In addition, Microsoft is entitled to a new trial because the Court improperly instructed the jury that Microsoft bore the burden of proving invalidity by clear and convincing evidence. Because the Rita and DeRose references were never disclosed to the patent office, the appropriate standard should have been proof by the preponderance of the evidence.[49]   The Court's instruction was clearly prejudicial, especially in light of i4i's heavy reliance on the clear and convincing standard at trial.

Finally, Microsoft is entitled to a new trial because the Court did not permit Microsoft to present to the jury evidence concerning the Patent Office's recent grant of re-examination of the 449 patent.  At trial, i4i not only touted the Patent Office's allowance of the 449 patent over the Kugimiya reference, but also repeatedly stated that the Patent Office had validated i4i's

---

[49] The Supreme Court observed recently in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), the rationale underlying the Federal Circuit's deferential "clear-and-convincing" standard—"that the PTO, in its expertise, has approved the claim—seems much diminished" when a defense of invalidity rests on evidence that the PTO never considered.  *Id*. at 426.

invention through the use of i4i's products.[50]  Microsoft should have been able to explain to the jury how the Patent Office has now granted re-examination in light of Rita and DeRose, the very references that are now at issue.[51]  This false impression of that the Patent Office has blessed the 449 patent or that it would have allowed the currently asserted claims over these references was highly prejudicial to Microsoft.

## CONCLUSION:  RELIEF REQUESTED

For the foregoing reasons, Microsoft respectfully requests that this Court grant judgment as a matter of law and enter an order declaring claims 14, 18, and 20 of the '449 patent invalid as obvious under 35 U.S.C. § 103.  Microsoft alternatively moves the Court to enter a legal finding of obviousness under Fed. R. Civ. Procedure 52.  Microsoft also alternatively requests that this Court grant a new trial on the grounds that a finding by the jury that the 449 patent is valid is against the weight of the evidence.

---

[50] *See* Trial Tr. (5/15/09 a.m.) at 5:19-14:11, Trial Tr. (5/15/09 p.m.) 3:7-4:25.

[51] DTX-2369 (Patent Office Order Granting Reexamination).

DATED:  June 4, 2009

/s/  Kevin Kudlac
Matthew D. Powers (Lead Attorney)
  CA State Bar No. 104795
  matthew.powers@weil.com
**WEIL GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Phone: 602-802-3000
Fax: 602-802-3100

Kevin Kudlac
  State Bar No. 00790089
  kevin.kudlac@weil.com
**WEIL, GOTSHAL & MANGES LLP**
8911 Capital of Texas Highway, Suite 1350
Austin, TX  78759
Telephone:  512-349-1930
Fax:  512-527-0798

David Lender
*admitted pro hac vice*
  david.lender@weil.com
Paul Torchia
*admitted pro hac vice*
  paul.torchia@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 5th Avenue
New York, NY  10153
Telephone:  212-310-8000
Fax:  212-310-8007

Eric Findlay
  State Bar No. 00789886
  efindlay@findlaycraft.com
**FINDLAY CRAFT**
6760 Old Jacksonville Hwy Suite 101
Tyler, TX 75703
Telephone: 903-534-1100
Fax: 903-534-1137

**ATTORNEYS FOR DEFENDANT
MICROSOFT CORPORATION**

17

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, the foregoing document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A). Pursuant to FED. R. CIV. P. 5(d) and Local Rule 5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 4th day of June, 2009.


_____/s/  *Ashley Forrestier*_____
Ashley Forrestier

18